UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE LYNCH

GEORGE B. MANISCALCO,

    Plaintiff

*versus*

THOMSON FINANCIAL, INC.,

    Defendant

06 CV 1440

COMPLAINT

JURY DEMAND


RECEIVED
FEB 22 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff George B. Maniscalco, by and through his attorneys, Maya & Associates, P.C., hereby complains and alleges Defendant Thomson Financial violated his rights under local, state and federal law.

## PARTIES

1.    The Plaintiff is Mr. George B. Maniscalco, who resides at 51 Pietro Drive, Yonkers, New York 10710. At all times material hereto, the Plaintiff was over the age of forty (40), and therefore eligible for protection under the Age Discrimination in Employment Act (hereafter, at times, the "ADEA"). The Plaintiff has suffered cardiac health problems for many years. He has used a variety of cardiac medications for roughly five (5) years, and metal stents were placed in his heart about three (3) years ago for support.

2.    The Defendant is Thomson Financial, Inc. (hereafter, "Thomson" or the "Company"), located at 195 Broadway, New York 10007. Thomson employs at least twenty (20) employees, and is subject to the ADEA.

## JURISDICTION

3.    The Plaintiff previously filed a timely complaint as to the ADEA

violations with the Equal Employment Opportunity Commission, which issued a Right to
Sue Letter on November 28, 2005.  A copy of the Right to Sue Letter is attached hereto
as "Exhibit A."  The Plaintiff, therefore, has duly exhausted his administrative remedy.

   4.  The Court has subject matter jurisdiction over the entire dispute by way of
28 U.S.C. § 1332.

**VENUE**

   5.  The majority of events and / or omissions that give rise to the claims set
forth below occurred within the Southern District of New York.  Accordingly, under 29
U.S.C. § 1391(b), the Southern District of New York is a proper venue for adjudication
of the dispute.

**FACTS**

   6.  In 1990, the Plaintiff joined the sales force of Baseline, a company that
offered technological products and services to the global financial services industry.  In
2000, Thomson acquired Baseline.  In January of 2004, Thompson re-assigned the
Baseline sales force into its own sales force, and as a part of that re-assignment, the
Plaintiff obtained the position of "Account Director."  He was sixty-four (64) years old.

   7.  In July of 2004, Thomson transferred the Plaintiff to the Company "Swat
Team," a group of employees directed to resolve customer complaints.  In the midst of
that assignment, the Plaintiff began to suffer additional health problems.  For example, he
was diagnosed with sciatica and consequently missed roughly two (2) weeks of work.
Similarly, due to unrelated dental problems, the Plaintiff was left with large, noticeable
gaps between his teeth.

   8.  In December of 2004, Thomson disbanded the Swat Team.  The Company

2

assigned the younger members of the Team to new positions, which for many, was the position of Account Director. Although the Company had rated the Plaintiff favorably in the Account Director position earlier that year, Thomson did not return the Plaintiff to that position. In fact, the Company failed to offer the Plaintiff any position.

9.     In early January of 2005, the Plaintiff approached his direct supervisor, Mr. Henry D'Atri (hereafter, "D'Atri"), to query if the Company would entertain a severance offer in exchange for his resignation. Shortly thereafter, D'Atri informed the Plaintiff the Company approved the idea of a severance offer, and directed him to remain at his home office while the offer was under construction.

10.     On or about February 17, 2005, however, the Plaintiff got a telephone message from Mr. Chris Zingo (hereafter, "Zingo"), the Managing Director of Thomson Sales. Zingo requested the Plaintiff return his call, not to discuss the severance offer promised to him, but to discuss his objectives for that year. Notably, Zingo did not direct the Plaintiff to return to the Thomson corporate office. The Plaintiff promptly returned the call, but Zingo did not reply until late on Friday, March 11, 2005. In the reply, Zingo still had not directed the Plaintiff to return to the corporate office, though he did request an opportunity to meet with him the next Monday, March 15, 2005. Early that day, the Plaintiff informed Zingo he would not be available because of an appointment with his physician. Incidentally, the appointment was for the Plaintiff to undergo a cardiac stress test, one that was returned with "abnormal" results.

11.     On March 24, 2005, Zingo left the Plaintiff a message in which he questioned (almost rhetorically) if he planned to return to the office and offered to process the papers necessary to effect his departure. As before, the Plaintiff responded

promptly. He informed Zingo of his productivity at his home office, *e.g.*, helping former customers and current colleagues, and expressed a desire to discuss his future at Thomson. The Plaintiff also referred to his recent trip to Bermuda to celebrate his birthday. He had turned sixty-six (66) years old.

12.     In early April of 2005, the Plaintiff was contacted by Ms. Susan Poryles (hereafter, "Poryles"), Director of Thomson Human Resources. Poryles requested an overview of his employment status, and expressly agreed to accept that overview *via* e-mail. The very next day, the Plaintiff duly provided the e-mail. In the e-mail, the Plaintiff noted a dentist appointment he had the next day, but stated he would be free to communicate with her later in the day.

13.     In late April of 2005, the Plaintiff was contacted by the Executive Vice President of Thomson Sales, Mr. Chris Perry (hereafter, "Perry"), who accused the Plaintiff of violations of Company policy, such as the purported refusal to appear in the corporate office. In response to the e-mail, the Plaintiff began to suffer additional health problems, such as shortness of breath, sleeplessness, but most disturbingly, chest pains.

14.     The next day, the Plaintiff contacted Perry and complained the Company had discriminated against him due to his age. Rather than investigate the allegation, as required by Thomson policy, the Company charged the Plaintiff fabricated the allegations in an effort to obtain "preferential treatment." The Company also falsely counseled the Plaintiff that he was not the target of age discrimination because he had not suffered any "adverse action." The Plaintiff realized the need for objective advice, and requested a respite so he could retain personal counsel. The Company, however, insisted

the exchange continue without delay, effectively in the absence of any counsel for the Plaintiff.

15.     In early May of 2005, due to the unlawful conduct of the Company, the Plaintiff was directed by his physician to go on a disability leave.  While on that leave, specifically on June 29, 2005, the Plaintiff tendered his resignation to the Company upon a theory of constructive discharge.

## COUNT 1
## HOSTILE WORK ENVIRONMENT UNDER THE ADEA

16.     The Plaintiff repeats and realleges paragraphs 1 through 15, above, as if fully set forth herein.

17.     As noted above, at all times material hereto, the Plaintiff was over forty (40) years of age.

18.     Due to his age, Thomson subjected the Plaintiff to pervasive misconduct that altered the conditions of his employment and created a hostile and abusive employment atmosphere.

19.     In equal measure, due to his age, Thomson subjected the Plaintiff to severe misconduct that altered the conditions of his employment and created a hostile and abusive employment atmosphere.

20.     The Plaintiff was offended by the misconduct, which would be equally offensive to a reasonable person.

21.     At all times material hereto, Thomson was aware of and responsible for the misconduct, as alleged above.

22.     For these reasons, Thomson has created and maintained a hostile work

environment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*.

23.     The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

24.     Thomson is culpable of a "willful violation" of the ADEA. The Plaintiff therefore claims liquidated damages, as provided by the statute. In addition, Thomson acted with total disregard of the rights the Plaintiff enjoyed under the ADEA. Accordingly, the Plaintiff puts the Company on notice of his claim for punitive damages, as echoed by the Wherefore Clause, *infra*.

**COUNT 2**
**HOSTILE WORK ENVIRONMENT UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**

25.     The Plaintiff repeats and realleges paragraphs 1 through 24, above, as if fully set forth herein.

26.     Due to his age, Thomson subjected the Plaintiff to pervasive misconduct that altered the conditions of his employment and created a hostile and abusive employment atmosphere.

27.     In equal measure, due to his age, Thomson subjected the Plaintiff to severe misconduct that altered the conditions of his employment and created a hostile and abusive employment atmosphere.

28.     The Plaintiff was offended by the misconduct, which would be equally offensive to a reasonable person.

29.     At all times material hereto, Thomson was aware of and responsible for the misconduct, as alleged above.

30.     For these reasons, Thomson has created and maintained a hostile work environment in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

31.     The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

**COUNT 3**
**HOSTILE WORK ENVIRONMENT UNDER THE NEW YORK CITY**
**HUMAN RIGHTS LAW**

32.     The Plaintiff repeats and realleges paragraphs 1 through 31, above, as if fully set forth herein.

33.     Due to his age, Thomson subjected the Plaintiff to pervasive misconduct that altered the conditions of his employment and created a hostile and abusive employment atmosphere.

34.     In equal measure, due to his age, Thomson subjected the Plaintiff to severe misconduct that altered the conditions of his employment and created a hostile and abusive employment atmosphere.

35.     The Plaintiff was offended by the misconduct, which would be equally offensive to a reasonable person.

36.     At all times material hereto, Thomson was aware of and responsible for the misconduct, as alleged above.

37.     For these reasons, Thomson created and maintained a hostile work environment in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

38.     The Plaintiff has suffered substantial pecuniary loss and personal injury as

the direct and proximate result of the violation.

39.     Thomson acted with total disregard of the rights the Plaintiff enjoyed under the New York City Human Rights Law.   Accordingly, the Plaintiff puts the Company on notice of his claim for punitive damages, as echoed by the Wherefore Clause, *infra*.

### COUNT 4
### RETALIATION UNDER THE ADEA

40.     The Plaintiff repeats and realleges paragraphs 1 through 39, above, as if fully set forth herein.

41.     As noted above, at all times material hereto, the Plaintiff was over forty (40) years of age.

42.     The Plaintiff complained to Thomson the Company had subjected him to age discrimination.

43.     Due to the protected activity, Thomson subjected the Plaintiff to adverse employment actions, as alleged above.

44.     The Company, therefore, retaliated against the Plaintiff because of his protected activity and has violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*.

45.     The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

46.     Thomson is culpable of a "willful violation" of the ADEA.  The Plaintiff therefore claims liquidated damages, as provided by the statute.  In addition, Thomson acted with total disregard of the rights the Plaintiff enjoyed under the ADEA.

Accordingly, the Plaintiff puts the Company on notice of his claim for punitive damages, as echoed by the Wherefore Clause, *infra*.

## COUNT 5
## RETALIATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

47.     The Plaintiff repeats and realleges paragraphs 1 through 46, above, as if fully set forth herein.

48.     The Plaintiff complained to Thomson the Company had subjected him to age discrimination.

49.     Due to the protected activity, Thomson subjected the Plaintiff to adverse employment actions, as alleged above.

50.     The Company, therefore, retaliated against the Plaintiff because of his protected activity and has violated the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

51.     The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

## COUNT 6
## RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

52.     The Plaintiff repeats and realleges paragraphs 1 through 51, above, as if fully set forth herein.

53.     The Plaintiff complained to Thomson the Company had subjected him to age discrimination.

54.     Due to the protected activity, Thomson subjected the Plaintiff to adverse employment actions, as alleged above.

55.     The Company, therefore, retaliated against the Plaintiff because of his protected activity and has violated the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

56.     The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

57.     Thomson acted with total disregard of the rights the Plaintiff enjoyed under the New York City Human Rights Law.    Accordingly, the Plaintiff puts the Company on notice of his claim for punitive damages, as echoed by the Wherefore Clause, *infra*.

## COUNT 7
## CONSTRUCTIVE DISCHARGE UNDER THE ADEA

58.     The Plaintiff repeats and realleges paragraphs 1 through 57, above, as if fully set forth herein.

59.     As noted above, at all times material hereto, the Plaintiff was over forty (40) years of age.

60.     At all times material hereto, the Plaintiff was qualified for the position of "Account Director."

61.     By the conduct alleged above, Thomson deliberately created an intolerable employment atmosphere that would compel any reasonable person, such as the Plaintiff, to resign.

62.     For these reasons, Thomson constructively discharged the Plaintiff in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*.

63.     The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

10

64.     Thomson is culpable of a "willful violation" of the ADEA.  The Plaintiff therefore claims liquidated damages, as provided by the statute.  In addition, Thomson acted with total disregard of the rights the Plaintiff enjoyed under the ADEA.  Accordingly, the Plaintiff puts the Company on notice of his claim for punitive damages, as echoed by the Wherefore Clause, *infra*.

### COUNT 8
### CONSTRUCTIVE DISCHARGE UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

65.     The Plaintiff repeats and realleges paragraphs 1 through 64, above, as if fully set forth herein.

66.     At all times material hereto, the Plaintiff was qualified for the position of "Account Director."

67.     By the conduct alleged above, Thomson deliberately created an intolerable employment atmosphere that would compel any reasonable person, such as the Plaintiff, to resign.

68.     For these reasons, Thomson constructively discharged the Plaintiff in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*.

69.     The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

### COUNT 9
### CONSTRUCTIVE DISCHARGE UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

70.     The Plaintiff repeats and realleges paragraphs 1 through 69, above, as if fully set forth herein.

71.     At all times material hereto, the Plaintiff was qualified for the position of

"Account Director."

72.    By the conduct alleged above, Thomson deliberately created an intolerable employment atmosphere that would compel any reasonable person, such as the Plaintiff, to resign.

73.    For these reasons, Thomson constructively discharged the Plaintiff in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

74.    The Plaintiff has suffered substantial pecuniary loss and personal injury as the direct and proximate result of the violation.

75.    Thomson acted with total disregard of the rights the Plaintiff enjoyed under the New York City Human Rights Law.    Accordingly, the Plaintiff puts the Company on notice of his claim for punitive damages, as echoed by the Wherefore Clause, *infra*.

**WHEREFORE,** Plaintiff George B. Maniscalco demands judgement as follows:

(A) on the First Count, judgement against the Defendant for economic loss, personal injury, liquidated damages, punitive damages, each in an amount determined at trial;

(B) on the Second Count, judgement against the Defendant for economic loss, personal injury, each in an amount determined at trial;

(C) on the Third Count, judgement against the Defendant for economic loss, personal injury, punitive damages, each in an amount determined at trial;

(D) on the Fourth Count, judgement against the Defendant for economic loss, personal injury, liquidated damages, punitive damages, each in an amount determined at trial;

(E) on the Fifth Count, judgement against the Defendant for economic loss, personal injury, each in an amount determined at trial;

(F) on the Sixth Count, judgement against the Defendant for economic loss, personal injury, punitive damages, each in an amount determined at trial;

(G) on the Seventh Count, judgement against the Defendant for economic loss, personal injury, liquidated damages, punitive damages, each in an amount determined at trial;

(H) on the Eighth Count, judgement against the Defendant for economic loss, personal injury, each in an amount determined at trial;

(I) on the Ninth Count, judgement against the Defendant for economic loss, personal injury, punitive damages, each in an amount determined at trial;

(J) on each Count, an award of attorneys fees and costs; and

(K) on each Count, such additional relief as the Court deems just and proper.

Dated: Westport, Connecticut
      February 21, 2006

Respectfully submitted,

MAYA & ASSOCIATES, P.C.

By _____

Bryan T. Carmody (BC 4466)
266 Post Road East
Westport, Connecticut 06880
Fairfield, CT 06430
(203) 221-3100
(203) 221-3199 (fax)

*Attorneys for Plaintiff*

EXHIBIT A

Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **George Maniscalco**<br>**51 Pietro Drive**<br>**Yonkers, NY 10710** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2005-03339 | **Legal Unit** | **(212) 336-3620** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Spencer H. Lewis Jr.* (signature)

**Spencer H. Lewis, Jr.,**
**District Director**

**NOV 2 8 2005**

(Date Mailed)

Enclosure(s)

cc: **THOMSON FINANCIAL**
**c/o Christina Feeny**
**Metro Center**
**One Station Place**
**Stamford, CT 06902**

**Bryan Carmody, Esq.**
**Maya & Associates, P.C.**
**266 Post Road East**
**Westport, CT 06880**